Peter R. Ginsberg (admitted *pro hac vice*)
Mitchell C. Stein (admitted *pro hac vice*)
Sullivan & Worcester LLP
1633 Broadway, 32nd Floor
New York, NY 10019
Phone: 212-660-3000
Fax: 212-660-3001
Email: prginsberg@sullivanlaw.com
Email: mstein@sullivanlaw.com

Nathaniel R. B. Koslof (admitted *pro hac vice*)
Sullivan & Worcester LLP
One Post Office Square
Boston, MA  02109
Phone: 617-338-2439
Fax: 617-338-2880
Email: nkoslof@sullivanlaw.com

Renee E. Rothauge, OSB #903712
Markowitz Herbold PC
1455 SW Broadway, Suite 1900
Portland, OR  97201
Phone: 503-295-3085
Fax: 503-323-9105
Email: ReneeRothauge@markowitzherbold.com

*Attorneys for Plaintiff Counterclaim Defendant Kawhi Leonard*

## UNITED STATES DISTRICT COURT
## DISTRICT OF OREGON
## PORTLAND DIVISION

| | |
|---|---|
| KAWHI LEONARD,<br><br>　　　　Plaintiff/Counterclaim Defendant,<br><br>v.<br><br>NIKE, INC.,<br><br>　　　　Defendant/Counterclaimant. | Case No. 3:19-cv-01586-MO<br><br>**PLAINTIFF KAWHI LEONARD'S RESPONSE IN OPPOSITION TO DEFENDANT AND COUNTERCLAIMANT NIKE, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>**ORAL ARGUMENT REQUESTED** |

PLAINTIFF'S RESPONSE TO MOTION FOR JUDGMENT ON THE PLEADINGS

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... iv

INTRODUCTION ......................................................................................... 1

BACKGROUND ........................................................................................... 3

I.    Mr. Leonard Conceived of and Created the Leonard Logo Before He Entered into the Nike Agreement. ................................................................................. 3

II.   Mr. Leonard Subsequently Permitted Nike to Use the Leonard Logo under His Control and Supervision................................................................................ 5

III.  Nike Recognized that Mr. Leonard is the Owner of the Leonard Logo. ........................... 5

IV.  Nike Files a Copyright Application for the Leonard Logo without Mr. Leonard's Knowledge. ................................................................................ 6

PROCEDURAL BACKGROUND.................................................................... 7

ARGUMENT ................................................................................................. 8

I.    Legal Standard: A Motion for Judgment on the Pleadings is Limited to the Sufficiency of Pleadings............................................................................. 8

II.   Nike's Motion Does Not Challenge the Sufficiency of Mr. Leonard's Pleadings But, Rather, Disputes Facts. ...................................................................... 10

III.  Mr. Leonard Adequately Pled that He Owns the Leonard Logo. ..................................... 11

      A.   The Complaint Alleges that Mr. Leonard Created the Leonard Logo .................. 12

      B.   Mr. Leonard Has Pled that He Continues to Own the Leonard Logo.................. 18

IV.  Nike Is Not Entitled to Judgment as a Matter of Law on Nike's Counterclaims. ............ 23

      A.   The Parties Dispute Whether Nike Owns a Valid Copyright in the Leonard Logo. ............................................................................. 24

      B.   Alternatively, Mr. Leonard's Allegations and Affirmative Defenses Preclude an Award of Judgment in Nike's Favor Regarding Nike's Copyright and Breach of Contract Counterclaims........................................................ 26

      C.   Mr. Leonard Did Not Fraudulently Register His Copyright................................ 27

V.     In the Event that the Court Finds Mr. Leonard's Allegations Deficient, Leave to Amend is Properly Granted ............................................................................................ 27

CONCLUSION ........................................................................................................................ 28

## TABLE OF AUTHORITIES

**Cases**                                                                                                    **Page**

*ABS Entm't v. CBS Corp.*,
    908 F.3d 405, 413 (9th Cir. 2018). …………………………………………… 11, 22

*Baxter v. MCA, Inc.*,
    812 F.2d 421, 425 (9th Cir. 1987) ................................................................. 16

*Bell v. Davis*,
    2019 U.S. Dist. LEXIS 223031 (D. Or. Dec. 31, 2019) ................................ 24

*Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*,
    2012 U.S. Dist. LEXIS 177718 (S.D. Cal. Dec. 13, 2012) ........................... 23

*Cafferty v. Scotti Bros. Records*,
    969 F. Supp. 193 (S.D.N.Y. 1997) ............................................................... 27

*Cent. Or. Indep. Health Servs. v. State*,
    211 Or. App. 520, 156 P.3d 97 (Or. Ct. App. 2007) ....................................... 19

*Clark v. Chase Home Fin. LLC*,
    2008 U.S. Dist. LEXIS 47295 (S.D. Cal. June 3, 2008) ................................. 9

*DC Comics v. Towle*,
    802 F.3d 1012, 1023 (9th Cir. 2015) ....................................................... 11, 22

*Desire, LLC v. Manna Textiles, Inc.*,
    2017 U.S. Dist. LEXIS 217691 (C.D. Cal. Aug. 18, 2017) .............................. 17

*Diamond Foods, Inc. v. Hottrix, LLC*,
    2016 U.S. Dist. LEXIS 93247 (N.D. Cal. July 18, 2016) ................................ 17

*Digimarc Corp. v. Verance Corp.*,
    2011 U.S. Dist. LEXIS 152031 (D. Or. Sept. 19, 2011........................................7

*Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*,
    122 F.3d 1211 (9th Cir. 1997) ....................................................................23

*Feist Publ'ns v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ....................................................................................11

*Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational
Church*,
    887 F.2d 228 (9th Cir. 1989) ......................................................................23

PLAINTIFF'S RESPONSE TO MOTION FOR JUDGMENT ON THE PLEADINGS

*Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*,
   925 F.3d 1140 (9th Cir. 2019) ...................................................................25

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
   896 F.2d 1542 (9th Cir. 1989) ................................................................8, 9

*In re Palmer*,
   207 F.3d 566 (9th Cir. 2000) ...................................................................21

*Int'l Longshore & Warehouse Union, Local 40 v. Columbia Grain*,
   2014 U.S. Dist. LEXIS 136326 (D. Or. July 21, 2014) .........................10

*James W. Fowler Co. v. QBE Ins. Corp.*,
   2019 U.S. Dist. LEXIS 106007 (D. Or. Jun. 25, 2019).........................24

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ...................................................................12

*L.A. Printex Industries v. Aeropostale, Inc.*,
   676 F.3d 841 (9th Cir. 2012) .............................................................. 12, 15

*Lambert Corp. v. LBJC Inc.*,
   2014 U.S. Dist. LEXIS 83108 (C.D. Cal. Jun. 16, 2014) .................24, 25

*Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*,
   922 F.3d 946 (9th Cir. 2019) ........................................................ *passim*

*Marchel Design, Inc. v. Best Master Enter., Inc.*,
   2008 U.S. Dist. LEXIS 110495 (C.D. Cal. Oct. 23, 2008) ...................13

*Mattel, Inc. v. MGA Entm't, Inc.*,
   616 F.3d 904 (9th Cir. 2010) ...........................................................17, 18, 20

*McNair v. Oregon*,
   2017 U.S. Dist. LEXIS 136125 (D. Or. Aug. 16, 2017)........................26

*Micro Star v. Formgen Inc.*,
   154 F.3d 1107 (9th Cir. 1998) ................................................................27

*Mountain v. Mehron, Inc.*,
   2018 U.S. Dist. LEXIS 226318 (C.D. Cal. Aug. 15, 2018) ..................15

*N. Pac. Ins. Co. v. Hamilton*,
   332 Or. 20, 22 P.3d 739 (Or. 2001) ......................................................19

PLAINTIFF'S RESPONSE TO MOTION FOR JUDGMENT ON THE PLEADINGS

*Nirvana LLC v. Mark Jacobs Int'l, LLC*,
    No. CV 18-10743(JAK)(SK) (C.D. Cal. Nov. 8, 2019) ..................................14, 16

*Nova Design Build Inc. v. Grace Hotels LLC¸*
    2009 U.S. Dist. LEXIS 23563 (N.D. Ill. Mar. 25, 2009) ......................................10

*Olson v. Sperry*,
    2015 U.S. Dist. LEXIS 23709 (C.D. Cal. Feb. 26, 2015) .....................................11

*Optima Tax Relief v. Channel Clarity, Inc.*,
    2015 U.S. Dist. LEXIS 186829 (C.D. Cal. Aug. 26, 2015) .............................10, 11

*Page v. Roundpoint Mortg. Servicing Corp.*,
    2019 U.S. Dist. LEXIS 23466 (D. Or. Feb. 12, 2019) .......................................8, 9

*PGF Care Center, Inc. v. Wolfe*,
    208 Or. App. 145, 144 P.3d 983 (Or. Ct. App. 2006) .........................................19

*Rentmeester v. Nike, Inc.*,
    883 F.3d 1111 (9th Cir. 2018) ..............................................................12, 16, 17

*Romex Textiles, Inc. HK Worldwide, LLC*,
    2019 U.S. Dist. LEXIS 141410 (C.D. Cal. Aug. 20, 2019) ..................................13

*S.O.S., Inc. v. Payday, Inc.*,
    886 F.2d 1081 (9th Cir. 1989) ................................................................18

*Shame on You Prods. v. Banks*,
    120 F. Supp. 3d 1123 (C.D. Cal. Aug. 14, 2015) ...............................................18

*Sleash, LLC v. One Pet Planet, LLC*,
    2014 U.S. Dist. LEXIS 109253 (D. Or. Aug. 6, 2014.........................................19

*Sollars v. City of Milwaukie*,
    222 Or. App. 384, 388, 193 P.3d 75 (Or. Ct. App. 2008) ...................................19

*Sorenson v. Wolfson*,
    96 F. Supp. 3d 347 (S.D.N.Y. 2015) ................................................................26

*Springboards to Educ., Inc. v. Families in Sch.*,
    2018 U.S. Dist. LEXIS 225759 (C.D. Cal. Apr. 26, 2018) ...................................9

*Swirsky v. Carey*,
    376 F.3d 841 (9th Cir. 2004) .............................................................................14

PLAINTIFF'S RESPONSE TO MOTION FOR JUDGMENT ON THE PLEADINGS

*Three Boys Music Corp. v. Bolton*,
   212 F.3d 477 (9th Cir. 2000) ...................................................12

*U.S. Auto Parts Network, Inc. v. Parts Geek LLC*,
   692 F.3d 1009 (9th Cir. 2012) ................................................22

*Umpqua Bank v. Progressive Cas. Ins. Co.*,
   2011 U.S. Dist. LEXIS 132127 (D. Or. Nov. 14, 2011) .......................8

*Von Saher v. Norton Simon Museum of Art at Pasadena*,
   592 F.3d 954 (9th Cir. 2010) ................................................13

*Williams v. Gaye*,
   895 F.3d 1106 (9th Cir. 2018) ...........................................12, 13,16

*Williams v. Invenergy, LLC*,
   2014 U.S. Dist. LEXIS 173160 (D. Or. Dec. 16, 2014) .......................8

**Statutes and Rules**

17 U.S.C. § 101 .........................................................................22

17 U.S.C. §411(b) .................................................................26, 27

Fed. R. Civ. P.8(a)(2)...............................................................8

Fed. R. Civ. P. 12(c) ..............................................................8, 9

Fed. R. Civ. P. 12(b)(6)............................................................8

Fed. R. Civ. P. 15(a)(2)............................................................27

**Other Authorities**

1 Nimmer on Copyright §5.01………………………………………………………...11

PLAINTIFF'S RESPONSE TO MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff Kawhi Leonard ("Mr. Leonard") respectfully submits this response to the Motion for Judgment on the Pleadings (the "Motion") (Dkt. No. 54) filed by Defendant Nike, Inc. ("Nike").  For the reasons set forth herein, the Motion should be denied in its entirety.

INTRODUCTION

This civil action arises out of a dispute between Mr. Leonard, a professional basketball star who has twice been named Most Valuable Player at the NBA Finals, and Nike, with whom Mr. Leonard had a prior endorsement arrangement, over who created and who owns the copyright in the "Leonard Logo." The Leonard Logo is a design based on the size and shape of Mr. Leonard's famously large hands that incorporates his initials "KL" and his jersey number "2."  As shown below, Mr. Leonard's complaint clearly sets forth the factual bases for his claim in support of declaratory judgment that he is the owner of the Leonard Logo and its copyrights and has not infringed any of Nike's purported copyrights.  Likewise, Mr. Leonard has unequivocally denied the elements of Nike's counterclaims, including that he has assigned rights in the Leonard Logo to Nike under the terms of the "Men's Pro Basketball Contract" between the parties dated October 26, 2011 (the "Nike Agreement").

Nike's Motion does not challenge the sufficiency of Mr. Leonard's pleadings.[1]  Instead, in an effort to short-circuit discovery and the fact finding required to resolve this dispute, Nike has concocted its Motion based on meritless arguments that the pleadings, as well as a ruling by the United States District Court for the Southern District of California in San Diego where this action was originally filed, create undisputed "facts" which entitle it to judgment.  Indeed, Nike's

---

[1] Nike had an opportunity to move to dismiss Mr. Leonard's pleadings under Rule 12(b)(6) when Mr. Leonard originally filed his complaint in San Diego, but did not, instead filing its answer and counterclaims.

PLAINTIFF'S RESPONSE TO MOTION FOR JUDGMENT ON THE PLEADINGS

Motion is based on the unsupportable and false premise that its allegations are true, while Mr. Leonard's are not. This is, of course, not permitted for motions under Rule 12(c), where the well-pled allegations of the non-moving party must be credited as true, while conflicting allegations of the moving party must be disregarded.

Moreover, the purported "admissions" and "undisputed facts" upon which Nike purports to rely in support of its Motion are neither admissions nor undisputed. To the contrary, the pleadings demonstrate a plethora of disputed facts, including: (1) whether the Leonard Logo should be considered to be a single logo or two separate logos; (2) the date when the Leonard Logo was created; (3) whether Mr. Leonard assigned rights in the Leonard Logo to Nike under the terms of the Nike Agreement, or merely licensed rights to Nike; and (4) whether Nike representatives acknowledged Mr. Leonard's ownership rights in the Leonard Logo. The existence of these factual issues was expressly recognized by the court in San Diego in the very same order on which Nike relies falsely to claim that the Leonard Logo was created under the Nike Agreement.[2]

Nike's Motion is inappropriate, the arguments on which it is based are meritless, and the Motion should be denied. In the alternative, if the Court finds that Mr. Leonard's pleadings are legally deficient in any manner, Mr. Leonard asks for leave to amend his pleadings in accordance with the Court's ruling.

---

[2] *See* (Dkt. No. 30-1 at 5 ("The parties' respective naming of the … images throughout their briefs epitomizes their dispute").) The district court in San Diego further recognized that the parties' disagreement over the genesis and ownership of the Leonard Logo "may or may not fall under the Nike Agreement" and will be "the bulk of the dispute" needing resolution. (*Id.* at 7.)

## BACKGROUND

I.    **Mr. Leonard Conceived of and Created the Leonard Logo Before He Entered into the Nike Agreement.**

As alleged in his Complaint (the "Complaint," Dkt. No. 1), Mr. Leonard is a professional basketball player currently playing for the Los Angeles Clippers of the National Basketball Association.  Mr. Leonard played for the San Antonio Spurs from the time he was drafted in June 2011 until 2018, when he was traded to the Toronto Raptors.  (*Id.* ¶ 14.)  Mr. Leonard has helped his team win two NBA championships (in 2014 with the Spurs and in 2019 with the Raptors), and each time was named the Most Valuable Player of the Finals.  (*Id.*)

Throughout his career, Mr. Leonard has been "known for his extremely large hands," which, as alleged in the Complaint, "spectators have noticed" and they are "often described as contributing to his success as a player."  (*Id.* ¶ 15.)  The Complaint alleges that in recognition of the unique nature of his hands, "since at least his college years [Mr.] Leonard contemplated and conceived of ideas for a personal logo which would be unique to him and reflect something meaningful relating to his own image."  (*Id.* ¶ 17; *see also id.* ¶ 1.)  The Complaint alleges that Mr. Leonard created the logo at issue, which encompassed his hand, his initials and his jersey number (number two), when he was in college.  (*Id.* ¶¶ 1, 17-18.)  Throughout the period in which he created the Leonard Logo (*i.e.,* in the years preceding December 2011), Mr. Leonard shared his original work with family and friends, solicited the advice of others and made modifications to his design.  (*Id.*  ¶ 19.)

Nike concedes that Mr. Leonard created "his own sketch that incorporated a hand, the initials 'KL' and the number '2'" and subsequently shared that design with Nike.  (Motion at 4.) Nike also concedes that Nike has no right to that logo.  (Dkt. No. 17-1 at 2) ("NIKE does not

assert ownership of [Mr.] Leonard's design [forwarded to Nike].  As far as Nike is concerned, [Mr.] Leonard is free to use it.")

On October 26, 2011, Nike and Mr. Leonard signed the Nike Agreement, the purpose of which was for Mr. Leonard to provide "personal services and expertise in the sport of professional basketball and [Mr. Leonard's] endorsement of the Nike Brand and use of Nike products."  (Compl. ¶¶ 20, 22.)  The Nike Agreement's initial duration was from October 1, 2011 to September 30, 2014, and thereafter extended in a series of agreements finally expiring on September 30, 2018.  (Compl. ¶ 21.)

The Nike Agreement included an annexed "Nike Standard Terms & Conditions," which Nike prepared.  Those terms state, *inter alia*, that "Nike exclusively owns all rights, title and interest in and to the Nike Marks and that Nike shall exclusively own all rights, title and interest in and to any logos, trademarks, service marks, characters, personas, copyrights, shoe or other product designs, patents, trade secrets or other forms of intellectual property **created by Nike** (and/or its agents), CONSULTANT or ATHLETE *in connection with this Contract*."[3] (Nike Agreement, Nike Standard Terms & Conditions, ¶ 8 (emphasis added).)  The Nike Agreement, however, did not address ownership of intellectual property created by Mr. Leonard prior to his execution of the Nike Agreement that was later modified by Nike.  The contractual ambiguity surrounding whether the Leonard Logo was "created . . . in connection with this Contract" and the facts surrounding it lie at the heart of the dispute between the parties.

---

[3] "Nike Marks" is a defined term "meaning trademarks or brands owned and/or controlled by Nike," including the Nike Swoosh Design and the Nike Air Design.  Mr. Leonard denies that the Leonard Logo constitutes a Nike Mark.  (Countercl. ¶ 85; Countercl. Answer ¶ 85.)

PLAINTIFF'S RESPONSE TO MOTION FOR JUDGMENT ON THE PLEADINGS

II.    **Mr. Leonard Subsequently Permitted Nike to Use the Leonard Logo under His Control and Supervision.**

Mr. Leonard's pleadings allege that, subsequent to both his creation of the Leonard Logo and his signing of the Nike Agreement, Nike discussed with him the creation of a unique logo to affix to merchandise to be sold under the Nike Agreement.  (Compl. ¶ 23.)  Nike proposed concepts to Mr. Leonard, all of which Leonard rejected.  (*Id.* ¶¶ 24-25.)  Mr. Leonard instead forwarded the Leonard Logo to Nike, and specifically "said he would permit Nike to use [the logo] during the term of the Nike Agreement (under his supervision and control)."  (*Id.* ¶ 25.)  After rejecting efforts by Nike to modify his logo (*Id.* ¶ 26-27), Mr. Leonard alleges that he ultimately accepted an additional proposal from Nike in June 2014 that modestly modified the Leonard Logo, granting Nike permission to affix that logo on merchandise during the term of the Nike Agreement, while conditioning that permission upon his retaining ownership of the Leonard Logo.  (*Id.* ¶ 29.)  Mr. Leonard alleges that his representatives "confirmed that [Mr.] Leonard continued to own the Leonard Logo" after he gave permission to Nike use it (*Id.* ¶ 31), and that Mr. Leonard never transferred the rights to the Leonard Logo to Nike (*Id.* ¶ 32).[4]

III.    **Nike Recognized that Mr. Leonard is the Owner of the Leonard Logo.**

The parties dispute whether the other party acted in a manner consistent with ownership of the Leonard Logo during the term of the Nike Agreement.  Mr. Leonard has pled that discoverable communications, including text messages and emails between and among Mr. Leonard and Nike personnel, show that Mr. Leonard retained ownership of the Leonard Logo and that Nike representatives contemporaneously recognized Mr. Leonard's status and rights as

---

[4] Mr. Leonard expects to demonstrate during discovery that he would not have continued to work on the Leonard Logo, or allowed Nike to modify it, had Nike not clearly indicated to him that he would retain ownership and control over the Leonard Logo.

the owner of the logo. (*Id.* ¶¶ 32-33.) Moreover, Mr. Leonard alleges that he freely used the Leonard Logo on non-Nike goods during the term of the Nike Agreement (including on merchandise used for basketball camps and charity events), and that Nike knew of and did not challenge such uses. (*Id.* ¶ 34.) The allegation that Nike on multiple occasions refused to act when Mr. Leonard's representatives, upon learning that third-parties were using the Leonard Logo without authorization, reached out to Nike for advice and assistance in halting the unauthorized use is consistent with Nike's lack of ownership in the Leonard Logo. (*Id.* at ¶ 35.) Nike, meanwhile, denies the allegations that it consented to such uses or failed to assist Mr. Leonard in seeking to halt unauthorized uses. (Nike Answer ¶ 34-35.)

**IV.    Nike Files a Copyright Application for the Leonard Logo without Mr. Leonard's Knowledge.**

Nike, without notice to Mr. Leonard, later filed an application with the United States Copyright Office to register a copyright in the Leonard Logo. The Copyright Office granted Nike's application on May 11, 2017. (*Id.* ¶¶ 36-37.) Mr. Leonard was unaware that Nike had filed this application, and Nike did not notify Mr. Leonard when the registration was awarded. (*Id.* ¶¶ 36, 41.) Nike's claim to ownership of the Leonard Logo is premised on the false representations Nike made in its copyright application, including that it authored the logo. (*Id.* ¶ 40.)

Mr. Leonard, meanwhile, registered two trademarks in three different categories of registration consisting of, and inspired by, Mr. Leonard's creation of the Leonard Logo, including an image of his hand, his initials and jersey number. (*Id.* at ¶ 42.) On June 3, 2019, the same day that the Complaint was filed, Mr. Leonard applied to register his copyright in the Leonard Logo with the US Copyright Office. On his application, Mr. Leonard disclosed the prior Nike copyright registration of the same logo. The US Copyright Office registered Mr.

PLAINTIFF'S RESPONSE TO MOTION FOR JUDGMENT ON THE PLEADINGS

Leonard's copyright under registration number VA 2-153-704.  (Countercl. ¶ 40; Countercl. Answer ¶ 40.)  Through this Motion, Nike now seeks a judgment declaring that Nike owns all rights to the Leonard Logo and invalidating Mr. Leonard's copyright.

## PROCEDURAL BACKGROUND

Mr. Leonard initiated this action in the United States District Court for the Southern District of California on June 3, 2019.  The Complaint states a claim for relief seeking declaratory judgment pursuant to, *inter alia*, 17 U.S.C. §§ 101 and 201(a) that Mr. Leonard is the sole author of the Leonard Logo, that his use of the Leonard Logo does not infringe on Nike's rights, and that Nike committed fraud on the Copyright Office.

Nike filed its Answer and Counterclaims to the Complaint on July 17, 2019 (the "Nike Answer" and the "Counterclaim", respectively, each at Dkt. No. 16).  Nike asserts six counterclaims against Mr. Leonard: (1) declaratory judgment of copyright ownership; (2) copyright infringement; (3) cancellation of Leonard's registration of copyright number VA 2-153-704 for "fraud on the Copyright Office"; (4) breach of paragraph 8 of the Nike Agreement; (5) breach of paragraph 13(b) of the Standard Terms and Conditions in the Nike Agreement; and (6) breach of paragraph 21 of the Standard Terms and Conditions in the Nike Agreement.[5]  On that same day, Nike filed a motion to transfer venue to the District of Oregon.  (Dkt. No. 17.)

---

[5] Nike does not address its Sixth Counterclaim in its Memorandum of Points and Authorities and cites no authority to suggest that, as a matter of law, Mr. Leonard breached the Nike Agreement by filing this action in California.  *See Digimarc Corp. v. Verance Corp.*, 2011 U.S. Dist. LEXIS 152031, at *34 (D. Or. Sept. 19, 2011) (denying motion for summary judgment as to issue of whether filing action in Delaware breached contract and noting "the absence of Oregon authority supporting the conclusion that such a [breach of contract] claim is viable").  In any case, Mr. Leonard disputes Nike's characterization of the order to transfer venue entered by the transferring court, and no finding was made that Mr. Leonard breached the Nike Agreement by filing his Complaint in the Southern District of California.

Mr. Leonard filed his Answer to Defendant's Counterclaim on August 28, 2019 (Dkt. No. 26, cited herein as "Countercl. Answer").

The District Court in San Diego granted Nike's motion to transfer on October 3, 2019. (Dkt. No. 30-1.)  Without examining the sufficiency of the parties' allegations or the merits of the parties' claims, the transferring court noted that that "[n]o matter the details of the design process, this dispute is clearly over the use and ownership of the finalized copyrighted logo." (Dkt. No. 30-1 at 6.)  Finding that Mr. Leonard's claim "involves *an issue that may or may not fall under the Nike Agreement* (in fact this will likely be the bulk of this dispute)," the transferring court thus held that this lawsuit arises under the Nike Agreement for venue purposes, while making no finding regarding the Leonard Logo itself.  (*Id.* at 7) (emphasis added.)

## ARGUMENT

## I.    Legal Standard: A Motion for Judgment on the Pleadings is Limited to the Sufficiency of Pleadings

To state a claim, a complaint need make only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The purpose of a Rule 12(c) motion is to challenge the sufficiency of the opposing party's pleadings.  *Williams v. Invenergy, LLC*, 2014 U.S. Dist. LEXIS 173160, at *8 (D. Or. Dec. 16, 2014).  The standard for granting a motion brought pursuant to Fed. R. Civ. P. 12(c) is "substantially identical" to the analysis for a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) because "under both rules, a court must determine whether the facts alleged in the complaint, taken as true, entitle the plaintiff to a legal remedy."  *Page v. Roundpoint Mortg. Servicing Corp.*, 2019 U.S. Dist. LEXIS 23466 (D. Or. Feb. 12, 2019) (citing *Pit River Tribe v. BLM*, 793 F.3d 1147, 1155 (9th Cir. 2015)).  Accordingly, a defendant's Rule 12(c) motion must be denied where the non-conclusory factual content of the complaint and reasonable inferences from that content are "plausibly suggestive of

PLAINTIFF'S RESPONSE TO MOTION FOR JUDGMENT ON THE PLEADINGS

a claim entitling the plaintiff to relief." *Id.* (citation omitted). For purposes of a Rule 12(c) motion, the allegations of the non-moving party must be accepted as true. *Hal Roach Studios, Inc. v. Richard Feiner & Co.,* 896 F.2d 1542, 1550 (9th Cir. 1989); *see also Umpqua Bank v. Progressive Cas. Ins. Co.*, 2011 U.S. Dist. LEXIS 132127, at *3 (D. Or. Nov. 14, 2011) ("the allegations of fact by the nonmoving party are accepted as true and are construed in the light most favorable to that party"). With regard to all allegations of the moving party, allegations denied by the nonmoving party must be taken as false. *Hal Roach Studios, Inc.,* 896 F.2d at 1550. A motion for judgment on the pleadings should be granted only where "the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Id.* A defendant is not entitled to judgment on the pleadings if the complaint raises issues of fact which, if proved, would support the plaintiff's legal theories. *Clark v. Chase Home Fin. LLC*, 2008 U.S. Dist. LEXIS 47295, at *5 (S.D. Cal. June 3, 2008).

While documents attached to a complaint may be considered as a part of a Rule 12(c) motion, many courts refuse to consider documents attached to the answer in deciding a Rule 12(c) motion brought by a defendant. *Id.* at *10-11 (declining to consider documents attached to the defendant's answer when evaluating the defendant's motion for judgment on the pleadings and finding that "a Rule 12(c) is inappropriate under circumstances where pivotal documents are attached to the answer, and not the complaint"); *Springboards to Educ., Inc. v. Families in Sch.*, 2018 U.S. Dist. LEXIS 225759, at * 14-15 (C.D. Cal. Apr. 26, 2018) (declining, on a motion for judgment on the pleadings, to consider documents attached to answer). In any event, if the court must look beyond the pleadings to resolve an issue, judgment on the pleadings is improper and the motion should instead be treated as a motion for summary judgment. *Hal Roach Studios,*

*Inc.,* 896 F.2d at 1550; *see also Int'l Longshore & Warehouse Union, Local 40 v. Columbia Grain*, 2014 U.S. Dist. LEXIS 136326, at *9 (D. Or. July 21, 2014) ("If matters outside the pleadings are considered, the [Rule 12(c)] motion shall be treated as one for summary judgment") (citing Fed. Civ. P. 12(d)).

## II.    Nike's Motion Does Not Challenge the Sufficiency of Mr. Leonard's Pleadings But, Rather, Disputes Facts.

Nike's Motion does not argue that Mr. Leonard's allegations, accepted as true for purposes of the instant Motion, fail to state his claims.  Nor could it.  Mr. Leonard's allegations of ownership of the Leonard Logo are well pled.  On this basis alone, Nike's Motion fails.  *See Optima Tax Relief v. Channel Clarity, Inc.*, 2015 U.S. Dist. LEXIS 186829, at *9-10 (C.D. Cal. Aug. 26, 2015) (denying defendant's motion for judgment on the pleadings as to plaintiff's claim of copyright infringement).

Rather, Nike's Motion focuses on disputing the veracity of Mr. Leonard's allegations and claiming that Leonard has made certain admissions regarding factual issues when he transparently has not.  Specifically, Nike disputes Mr. Leonard's allegation that Mr. Leonard authored the Leonard Logo and argues that Nike, not Mr. Leonard, authored the Leonard Logo. Nike further disputes Mr. Leonard's allegation that authorship of the Leonard Logo predated and therefore did not arise in connection with the Nike Agreement.  Nike's contradictory allegations, however, are not relevant to whether Mr. Leonard sufficiently pled his own claims.  To the contrary, the existence of contradictory factual claims highlights that this is a dispute that cannot be resolved on the pleadings alone.  *See Nova Design Build Inc. v. Grace Hotels LLC¸* 2009 U.S. Dist. LEXIS 23563, at *12 (N.D. Ill. Mar. 25, 2009) ("To the extent that [movants] seek to challenge [nonmovants'] ownership of the copyright in question or challenge the accuracy of

other facts in the pleadings, a motion to dismiss is not the proper juncture to present such challenges"). Nike's Motion is inappropriate and should therefore be denied.

## III.    Mr. Leonard Adequately Pled that He Owns the Leonard Logo.

"Whether a work is protected by copyright law is a mixed question of law and fact." *ABS Entm't v. CBS Corp.*, 908 F.3d 405, 413 (9th Cir. 2018). Under the Copyright Act, copyright ownership "vests initially in the author or authors of the work, which is generally the creator of the copyrighted work." *DC Comics v. Towle*, 802 F.3d 1012, 1023 (9th Cir. 2015) (citation omitted).

To qualify for copyright protection, "a work must be original to the author." *Feist Publ'ns v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991) ("Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity"). That is, "the person claiming copyright must either himself be the author, or he must have succeeded to the rights of the author." 1 Nimmer on Copyright § 5.01 (citing cases). The question of originality in copyright law "is one of fact, not of law; one that may not be disposed of upon a motion to dismiss, but which must be established by proof." *Optima Tax Relief LLC v. Channel Clarity, Inc.* 2015 U.S. Dist. LEXIS 186829, at *9 (C.D. Cal. Aug. 26, 2015) (citation omitted).

Because a complaint's factual allegations regarding ownership must be accepted as true, Mr. Leonard's allegation that he originally created the design later registered by Nike suffices to defeat Nike's Motion. *See Olson v. Sperry*, 2015 U.S. Dist. LEXIS 23709, at *6 (C.D. Cal. Feb. 26, 2015) (denying motion to dismiss where plaintiff "alleged that its [works] are original, and

therefore it has stated a claim to relief which is plausible on its face").  Mr. Leonard's pleading easily meets this standard.

A.    **The Complaint Alleges that Mr. Leonard Created the Leonard Logo**

Mr. Leonard alleges that he created the Leonard Logo prior to the execution of the Nike Agreement.  *Supra* 3-4.  Indeed, Nike concedes that Mr. Leonard was the first to create a design incorporating his initials (KL) and the number "2" into the shape of a hand.  (Motion at 4; Dkt. No. 17-1 at 1.)

Moreover, Mr. Leonard alleges that these features of his design were protectable and central elements to the logo that Nike improperly copyrighted, as opposed to just "mere direction or ideas."[6]  The "original selection, coordination, and arrangement" of images may be a protectable expression under copyright law.  *Malibu Textiles, Inc. v. Label Lane Int'l, Inc.*, 922 F.3d 946, 952 (9th Cir. 2019).[7]

Although Nike professes not to rely on it (Motion at 8 n.2), Nike would have this Court find that Mr. Leonard admitted that Nike owned the mark based on a hearsay quotation in an online news article.  (See Countercl. ¶ 34).  The Court cannot rely on such materials in deciding a Rule 12(c) motion: what Mr. Leonard actually said and meant when he allegedly made statements to the press is a topic for discovery.  *See Khoja v. Orexigen Therapeutics, Inc.*, 899

---

[6] Unprotectable elements are "primarily ideas and concepts, material in the public domain, and *scènes à faire* (stock or standard features that are commonly associated with the treatment of a given subject)."  *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018).

[7] *See also L.A. Printex Industries v. Aeropostale*, *Inc.*, 676 F.3d 841, 850-51 (9th Cir. 2012) (arrangement of elements of "stylized fabric designs" entitled to broad copyright protection).  A "combination of elements" may qualify for copyright protection, "even if some or all of those elements are individually unprotected."  *Williams v. Gaye*, 895 F.3d 1106, 1119-20 (9th Cir. 2018); *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485-86 (9th Cir. 2000) (affirming judgment of copyright infringement and noting "it is well settled that a jury may find a combination of unprotectible elements to be protectible").

F.3d 988, 998 (9th Cir. 2018) (reversing in part the district court's dismissal of complaint and noting that "the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery").  Nor can the Court take judicial notice of disputed facts contained in publications. *Von Saher v. Norton Simon Museum of Art at Pasadena,* 592 F.3d 954, 960 (9th Cir. 2010) ("Courts may take judicial notice of publications introduced to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true").  Additionally, Mr. Leonard's answer to this paragraph in Nike's Counterclaim denies Nike's allegation "to the extent a response [was] required."  (Countercl. ¶ 34; Answer to Countercl. ¶ 34.)

### 1.    Nike's Conclusory Assertion that the "Claw Logo" is Distinct from the Leonard Logo Ignores Extrinsic Similarities Between the Designs.

Nike does not dispute that Mr. Leonard's design itself constitutes an expression of copyrightable elements.  Instead, Nike argues that the image it copyrighted is so distinct from the logo Mr. Leonard created that they are, in fact, different designs.  (Motion at 17 (arguing that Nike created "the particular artistic expression embodied in the NIKE Copyright Registration")).) However, determinations of similarity or differences between protectable elements of designs are not properly decided as a matter of law.  *See Romex Textiles, Inc. HK Worldwide, LLC*, 2019 U.S. Dist. LEXIS 141410, at *14-16 (C.D. Cal. Aug. 20, 2019) (denying defendant's motion for summary judgment and finding that plaintiff alleged sufficient similarities between floral designs printed on garments).  Where, as here, the protectable elements of the designs at issue contain extrinsic similarities, the Court must leave determination of the degree of similarities and differences to the fact finder.  *See Marchel Design, Inc. v. Best Master Enter., Inc.*, 2008 U.S. Dist. LEXIS 110495, at *6-7 (C.D. Cal. Oct. 23, 2008) (denying motion to dismiss and finding that jury could find "ornamental wood carvings with a pineapple design" to be substantially similar).

PLAINTIFF'S RESPONSE TO MOTION FOR JUDGMENT ON THE PLEADINGS

Ninth Circuit precedent makes clear that, at the pleading stage for a copyright infringement claim, a court may apply only the "extrinsic test" with respect to similarity of copyrighted works. *Malibu Textiles,* 922 F.3d at 952 ("At the pleading stage, this Court considers only the extrinsic test"). The extrinsic test requires a court to identify the elements of plaintiff's work that are claimed to be similar to the infringing work, determine whether each or any of those elements is subject to copyright protection, and then determine if there are objective similarities between the protectable aspects of the copyrighted work and the alleged infringing work. *Williams v. Gaye,* 895 F.3d at 1119 (extrinsic test "considers whether two works share a similarity of ideas and expression as measured by external, objective criteria"). If there are similarities, then the task of comparing and contrasting the similarities in order to determine copying, known as the "intrinsic test," is left to the fact finder. *See Swirsky v. Carey*, 376 F.3d 841, 845-46 (9th Cir. 2004) (reversing judgment and noting that "subjective question whether works are intrinsically similar must be left to the jury").

Nike has not identified any elements in the Leonard Logo that should be denied copyright protection under the extrinsic test.[8] *Cf. Nirvana LLC v. Mark Jacobs Int'l, LLC*, No. CV 18-10743(JAK)(SK) (C.D. Cal. Nov. 8, 2019), Order at 13 (Dkt. No. 60) (finding that infringement complaint "sufficiently alleges the extrinsic test" where defendants failed to contend that any of the elements of allegedly infringed upon work "must be filtered out as unprotectable before engaging in the comparison"). To the contrary, Nike concedes that the image it registered *does* contain many of the same elements as the design Mr. Leonard created and forwarded to Nike

---

[8] This is no surprise. Considering that both Mr. Leonard's original design and the modified version registered by Nike contain the same compositional elements, namely Mr. Leonard's hand outline and the interweaving of Mr. Leonard's initials and jersey number into the hand design, Nike cannot credibly challenge the Leonard Logo under the extrinsic test without undermining its own registered copyright.

(*e.g..,* Leonard's initials and the number "2" stylized in the shape of a hand), and Nike's suggestion that Mr. Leonard's design constituted only an "idea" or "concept" is wholly conclusory (and clearly erroneous). *Cf. Mountain v. Mehron, Inc.*, 2018 U.S. Dist. LEXIS 226318, at *42 (C.D. Cal. Aug. 15, 2018) (noting that application of extrinsic test to artworks involves examining "similarities in their objective details in appearance, including, but not limited to, the subject matter, shapes, colors, materials, and arrangement of the representations," and denying motion to dismiss). Nike's inability to prevail under the extrinsic test requires denial of Nike's motion.

The Ninth Circuit's decision in *L.A. Printex Industries v. Aeropostale, Inc.* is instructive. *See* 676 F.3d at 850-51. In that case, the Ninth Circuit determined that the plaintiff's "selection, coordination, and arrangement" of flower bouquets and branches printed on fabric constituted a protectable expression even though neither the "idea of a floral pattern depicting bouquets and branches" nor the individual elements of the design themselves were copyrightable. *Id.* The Ninth Circuit reversed the district court's award of summary judgment to the defendant and criticized the district court's prior determination that the plaintiff's design and the allegedly infringing work were not substantially similar. *Id.* at 851-52. In particular, the Ninth Circuit held that the district court failed to limit its assessment to the "objective similarities in the expressive elements" of the works, which "present[ed] a genuine dispute of material fact under the extrinsic test." *Id.* ("It is entirely immaterial that, in many respects, plaintiff's and defendant's works are dissimilar, if in other respects, similarity as to a substantial element of plaintiff's work can be shown") (citation omitted). Here, as in *L.A. Printex*, the objective similarities between Mr. Leonard's original design and Nike's modifications preclude judgment on the pleadings.

To the extent differences between the versions of the Leonard Logo can be identified, they are small in relation to the shared elements of the images and should be disregarded in connection with this motion.  *See Malibu Textiles, Inc.,* 922 F.3d at 952 ("differences" between the works being compared, such as color and "shape curvature," could be found to be "inconsequential" by a rational jury); *see also Nirvana LLC v. Mark Jacobs Int'l, LLC*, No. CV 18-10743(JAK)(SK), Order at 13 (Dkt. No. 60) (finding that complaint sufficiently alleged extrinsic test for substantial similarity and rejecting defendant's argument that images' common use of "a substantially circular outline for [a] smiley face and squiggly line used for a mouth, with a tongue sticking out" failed to demonstrate sufficient similarities).  Even if the similar elements do not comprise the entirety of the two works, a finder of fact may find that substantial similarity exists.  *Williams v. Gaye,* 895 F.3d at 1120 ("[A] trier of fact may find that the over-all impact and effect indicate substantial appropriation, even if any one similarity taken by itself seems trivial") (citation omitted); *see also Baxter v. MCA, Inc.*, 812 F.2d 421, 425 (9th Cir. 1987) (finding summary judgment improper and substantial similarity sufficiently pled even where "reasonable minds could differ as to the issue").

The case law Nike relies upon further demonstrates that Nike's motion should be denied. Nike's cases are factually distinguishable in that each involves claims of copyright protection for elements far more generalized and amorphous than the Leonard Logo.  For example, in *Rentmeester v. Nike*, 883 F.3d 1111 (9th Cir. 2018), the court held that plaintiff, a photographer who photographed NBA star Michael Jordan dunking a basketball, could not assert copyright infringement against Nike's use of its "Jumpman" logo because the general subject matter of the photo for which protection was sought – Jordan posing in a *grand jeté*-inspired manner while

PLAINTIFF'S RESPONSE TO MOTION FOR JUDGMENT ON THE PLEADINGS

dunking a basketball – was not protectable for copyright purposes.  *Id.* at 1121.[9]  Because the two images otherwise lacked similarities among protectable elements (including being taken in vastly different settings), the Ninth Circuit reasoned, the plaintiff could not satisfy the extrinsic test.  *Id.* at 1122.

Nike's argument in the instant matter is one specifically rejected by the *Rentmeester* court, where the Ninth Circuit acknowledged that no clear rule exists for assessing "when similarity in selection and arrangement becomes substantial, and in truth *no hard-and-fast rule could be devised to guide determinations that will necessarily turn on the unique facts of each case.*"  *Id.* at 1121 (emphasis added); *see also Diamond Foods, Inc. v. Hottrix, LLC*, 2016 U.S. Dist. LEXIS 93247, at *27-29 (N.D. Cal. July 18, 2016) (denying motion to dismiss infringement claim and rejecting argument that allegation of similarity was defeated by comparing images included in the pleadings); *Desire, LLC v. Manna Textiles, Inc.*, 2017 U.S. Dist. LEXIS 217691, at *27-28 (C.D. Cal. Aug. 18, 2017) (denying motions for summary judgment and finding that "in light of the similarities [between the designs], the differences support the conclusion that there is a genuine dispute of material fact on substantial similarity").

*Mattel, Inc. v. MGA Entm't, Inc.*, 616 F.3d 904, 913 (9th Cir. 2010) is similarly distinguishable in this respect.  In that case, Mattel sued MGA, which had hired a former Mattel employee for copyright infringement.  Mattel claimed ownership of sketches and sculpt of a doll that the employee had conceived while he was at Mattel, and which the employee's subsequent employer used to create a competing product.  *Id.* at 907.  The Ninth Circuit reversed the lower court's finding at summary judgment that the former employee's sketches and doll sculpt were

---

[9] The Ninth Circuit recognized that the pose Rentmeester conceived for his photograph was "highly original" and thus copyrightable, but also found that Jordan's pose in the photograph taken by Nike's photographer did not contain those elements.  *Id.*

entitled to full copyright protection because the lower court failed properly to apply the extrinsic test. Specifically, the Ninth Circuit found that the district court should have filtered out the concept of "fashion dolls with a bratty look or attitude", which did not constitute a protectable element. *Id*. at 916.[10] Such generalized concepts stand in clear contrast to the stylized design incorporating Mr. Leonard's initials and jersey number that is at issue in this action.

**B.      Mr. Leonard Has Pled that He Continues to Own the Leonard Logo.**

> **1.      The Nike Agreement Did Not Grant or Transfer Ownership of the Leonard Logo to Nike.**

Nike's argument that it owns the Leonard Logo under the "unambiguous" terms of the Nike Agreement misses the mark. Nike concedes that the Nike Agreement provides that Nike only owns "the Nike Marks"[11] and logos or copyrights created "*in connection with [the] Contract*." Nike ignores that the crux of the parties' dispute is, as the San Diego court recognized (Dkt. No. 30-1 at 7), whether the Leonard Logo was, in fact, created "in connection with" the Nike Agreement. The meaning of this clause is ambiguous, as it does not address ownership of intellectual property created by Mr. Leonard prior to his entry into the Nike Agreement. The Nike Agreement contains no separate provision transferring ownership of pre-

---

[10] The other cases cited by Nike are likewise distinguishable. *Cf. Shame on You Prods. v. Banks*, 120 F. Supp. 3d 1123, 1151 (C.D. Cal. Aug. 14, 2015) (plots of screenplays about a "basic premise of a walk of shame" by protagonist told "fundamentally different stories"). *S.O.S., Inc. v. Payday, Inc.* is distinguishable because Mr. Leonard has alleged that he created and shared with Nike a design that, at a minimum, incorporated elements of the design later registered by Nike. *See* 886 F.2d 1081, 1086 (9th Cir. 1989) (declining to find authorship of computer program code where party "only told programmers what tasks the software was to perform" and "did none of the coding and does not understand any computer language").

[11] Mr. Leonard denies that the Leonard Logo (or, alternatively, the "Claw Design" as described by Nike) is a "Nike Mark" as defined by the Nike Agreement. *See* Countercl. ¶85; Countercl. Answer ¶ 85.

existing logos or designs to Nike. Nor does the Nike Agreement address ownership of any

modifications made to those pre-existing logos. In light of the ambiguity in this contractual

language, Nike's Motion should be denied.[12]

In addition to this contractual ambiguity, Mr. Leonard's pleadings reflect that the

Leonard Logo was not created in connection with the Nike Agreement. Mr. Leonard alleges that

he authored protectable elements of the Leonard Logo before the execution of the Nike

Agreement in October 2011, meaning that, temporally, Mr. Leonard's design could not have

been created "in connection with" the Nike Agreement. Nike's assertion on page 14 of the

Motion that "[Mr.] Leonard alleges that he prepared the Leonard Logo sent to Nike in late

December 2011 or January 2012, indisputably during the Contract term" mischaracterizes and

omits what Mr. Leonard actually pled, which was that Mr. Leonard "refined" a logo in "late

December 2011 or January 2012" that Mr. Leonard "***had been creating for several years*** that

encompassed his large and powerful hands, his initials and his jersey number." (Compl. ¶ 18

(emphasis added); *see also id.* ¶ 1 ("The drawing [Mr.] Leonard authored was an extension and

continuation of drawings he had been creating since early in his college career").) The

---

[12] "[T]he threshold to show ambiguity is not high." *Cent. Or. Indep. Health Servs. v. State*, 211 Or. App. 520, 529, 156 P.3d 97 (Or. Ct. App. 2007). As long as the contractual term can reasonably be given more than one plausible interpretation it may be considered ambiguous. *N. Pac. Ins. Co. v. Hamilton*, 332 Or. 20, 25, 22 P.3d 739 (Or. 2001); *PGF Care Center, Inc. v. Wolfe*, 208 Or. App. 145, 151, 144 P.3d 983 (Or. Ct. App. 2006) (disputed contract provision is ambiguous "if it is capable of more than one sensible and reasonable interpretation"). Where, as here, the circumstances surrounding formation of the contract are disputed, parol evidence, including pre-contract negotiations, may be considered. *See, e.g., Sleash, LLC v. One Pet Planet, LLC*, 2014 U.S. Dist. LEXIS 109253, at *25 (D. Or. Aug. 6, 2014) (citing *Yogman v. Parrott*, 325 Or. 358, 363, 937 P.2d 1019 (Or. 1997)); *see also Sollars v. City of Milwaukie*, 222 Or. App. 384, 388, 193 P.3d 75 (Or. Ct. App. 2008) ("[p]arol evidence regarding the circumstances underlying the formation of a contract may be considered to determine whether a contract provision is ambiguous"). As shown throughout this brief and below, the parties dispute facts regarding formation of the contract.

Complaint alleges that Mr. Leonard "***forwarded***" the Leonard Logo to Nike following the execution of the Nike Agreement and later granted Nike permission to use it (*id*. ¶ 25), but does not allege that the Leonard Logo was ***created*** subsequent to the execution of the Nike Agreement.  In fact, Mr. Leonard alleges the opposite.

Additionally, Mr. Leonard submits, as alleged in the Complaint, that he retained ownership of the Leonard Logo and gave permission to Nike to work off that logo for the purpose of affixing the logo to merchandise during the term of the Nike Agreement.  (Compl. ¶¶ 29-33.)  He further alleges that Nike specifically acknowledged Mr. Leonard's continuing ownership of the logo.  (*Id.* ¶¶ 31, 33.)  This issue raises yet another question of fact that cannot be decided at this stage, precluding judgment as a matter of law.  To the extent the Nike Agreement is subject to varying interpretations, those are fact issues that cannot be resolved on a motion directed at the pleadings.  For instance, in *Mattel*, the Ninth Circuit reversed a finding of summary judgment on a copyright claim because, among other reasons, the issue of interpreting the contract "should have been submitted to the jury, which could then have been instructed to determine (1) whether [employee's] agreement assigned works created outside the scope of his employment at Mattel, and (2) whether his creation of the at-issue sketches was outside the scope of his employment."  616 F.3d at 913.[13]

Finally, Nike mischaracterizes the findings and scope of the order transferring this action to Oregon.  The district court in the Southern District of California made no finding that the pleadings establish that Mr. Leonard's design was created "in connection with" the Nike

---

[13] The Ninth Circuit's finding of contractual ambiguity is all the more telling since that case involved a summary judgment motion, in which the Court could (and did) consider extrinsic evidence regarding the interpretation of the contract.  *Id.*  On a Rule 12 motion, such as the instant Motion brought by Nike, no such extrinsic evidence should be considered.

Agreement.  Rather, the transferring court determined that the parties' dispute will involve

"evaluation and interpretation of the Nike Agreement," which sufficed to make the dispute fall

under the Nike Agreement.[14]  The transferring court agreed with Mr. Leonard that "the creation

of the hand-drawn logo certainly did ***not*** 'arise under' the Nike Agreement because it predated

the Nike Agreement."  (Dkt. No. 30-1 at 6) (emphasis added.)

        **2.**        **Mr. Leonard Has Pled that He Permitted Nike to Use the Leonard Logo Under His Supervision and Control during the Term of the Nike Agreement, And Any Contributions by Nike Were Trivial.**

Mr. Leonard's pleadings similarly reflect that he continued to own the Leonard Logo

throughout the term of the Nike Agreement.  The Complaint alleges that, after Mr. Leonard

created the Logo, he "permitted Nike to use the Leonard Logo" "under his supervision and

control" and he "never transferred the rights to the Leonard Logo to Nike." (Compl. ¶¶ 25, 32.)

Mr. Leonard's allegation that he repeatedly rejected Nike's proposed modifications to his design

is consistent with his allegation that he retained ownership and control of the Leonard Logo.

(Compl. ¶¶ 26, 27.)  Because Mr. Leonard "is entitled to protect all components of [his] artistic

expression, both derivative and original," he sufficiently pleads that he owns the design for

which Nike filed its copyright registration (whether that design is called the "Leonard Logo" or

the "Claw Logo").  *See Malibu Textiles, Inc.,* 922 F.3d at 952 (finding that plaintiff successfully

alleged ownership of copyrights).

---

[14] In any case, the transferring court's findings on that procedural matter have no preclusive effect on the sufficiency of Mr. Leonard's allegations for the purpose of the instant Motion.  *See generally In re Palmer,* 207 F.3d 566, 568-69 (9th Cir. 2000) (existing Tax Court judgment had no preclusive effect with respect to issue that was not "actually litigated" in Tax Court proceeding).

Alternatively, to the extent that the design for which Nike registered its copyright is deemed to be a separate work from Mr. Leonard's drawing, it is nonetheless a derivative work over which Mr. Leonard retains copyrights.[15]  When the owner of a work authorizes a third party to prepare a derivative work, "the owner of the underlying work retains a copyright in that derivative work with respect to all of the elements that the derivative creator drew from the underlying work and employed in the derivative work."  *DC Comics*, 802 F.3d at 1023.  The resulting derivative work may be independently copyrightable, but only to the extent that it meets the "constitutional requirement" of containing original, non-trivial elements as distinguished from the elements of the pre-existing work.  *U.S. Auto Parts Network, Inc. v. Parts Geek LLC*, 692 F.3d 1009, 1016 (9th Cir. 2012); *see also ABS Entm't v. CBS Corp.*, 908 F.3d 405, 414 (9th Cir. 2018) ("A derivative work is copyrightable when it meets two criteria: (1) the original aspects of a derivative work must be more than trivial, and (2) the original aspects of a derivative work must reflect the degree to which it relies on preexisting material and must not in any way affect the scope of any copyright protection in that preexisting material") (citations omitted).[16]  Accordingly, the scope of independent copyright protection for any derivative work is, at best, "limited."  *U.S. Auto Parts*, 692 F.3d at 1016.

While Mr. Leonard alleges that he forwarded the design to Nike and that Nike proposed modifications (one of which Mr. Leonard ultimately accepted), Mr. Leonard denies (and nothing

---

[15] The Copyright Act defines "derivative work" as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted.  *A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a 'derivative work.'*"  17 U.S.C. §101 (emphasis added).

[16] Nike fails to address, or even recognize, the second element of this test in its Motion.  On that basis alone, it fails to establish that it owns the Claw Logo as a derivative work.

in the pleadings reflects) that Nike made any "substantial and non-trivial" contributions to the Leonard Logo that are entitled to separate copyright protection. *See Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1224 (9th Cir. 1997) (focusing on "defining aspects" of allegedly infringed-upon and infringing costumes and finding that "claimed artistic differences" between costumes "are clearly not the defining aspect of the costumes" and could not be independently protectable as derivative works). In any event, whether Nike's purported "artistic contributions", if any, constituted "non-trivial, original" aspects worthy of derivative copyright protection (Mot. at 20) is a question of fact for a jury and is not appropriately decided at this stage. *See Brighton Collectibles, Inc. v. RK Tex. Leather Mfg.*, 2012 U.S. Dist. LEXIS 177718, at *27-28 (S.D. Cal. Dec. 13, 2012) (declining to rule on copyrightability of allegedly derivative designs in infringement action and denying motions for summary judgment).[17]

## IV.    Nike Is Not Entitled to Judgment as a Matter of Law on Nike's Counterclaims.

Judgment on the pleadings is equally improper with respect to Nike's counterclaims: many of the same well-pled allegations that defeat Nike's motion to dismiss Mr. Leonard's claim also defeat judgment on the pleadings in favor of Nike's counterclaims. Judgment on the pleadings with respect to Nike's counterclaims also is improper in light of the affirmative defenses which Mr. Leonard asserts in his Answer to Nike's Counterclaim. *See Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d

---

[17]Finally, Mr. Leonard believes that discovery will demonstrate that a meeting occurred between Nike representatives and Mr. Leonard and his representatives in San Antonio during which Nike representatives acknowledged, and later confirmed, Mr. Leonard's authorship and ownership of the Leonard Logo and even proposed a license to allow Nike to use the Leonard Logo. In the event the Court finds Mr. Leonard's allegation in paragraphs 31 and 33 of the Complaint to be insufficiently specific, Mr. Leonard respectfully requests leave to replead as appropriate.

228, 230 (9th Cir. 1989) (where a party raises an affirmative defense in his answer, "it will usually bar judgment on the pleadings").

 Because the Court must accept as true Mr. Leonard's denials of Nike's counterclaim allegations, Nike is not entitled to judgment on any of its counterclaims. *See James W. Fowler Co. v. QBE Ins. Corp.*, 2019 U.S. Dist. LEXIS 106007, at *5 (D. Or. Jun. 25, 2019) (denying plaintiff's motion for judgment on the pleadings "[b]ecause this Court must accept as true" defendant's denial of fact alleged by plaintiff).

### A. The Parties Dispute Whether Nike Owns a Valid Copyright in the Leonard Logo.

To establish copyright infringement, two elements must be proven: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Bell v. Davis,* 2019 U.S. Dist. LEXIS 223031, at *9 (D. Or. Dec. 31, 2019) (quoting *Feist*, 499 U.S. at 361). If the validity of a copyright upon which an infringement claim is based is disputed, judgment on that claim prior to fact-finding is inappropriate. *See Lambert Corp. v. LBJC Inc.*, 2014 U.S. Dist. LEXIS 83108, at *9 (C.D. Cal. Jun. 16, 2014) (denying plaintiff's copyright holder's motion for summary judgment on infringement claim where "plaintiff has not conclusively established that the copyright for the [work] is valid as a matter of law"). As set forth above, there remain multiple factual disputes between the parties concerning, *inter alia*, the validity of Nike's Copyright Registration No. VA0002097900. *Supra* 10-23. The very existence of this litigation reflects that Mr. Leonard disputes the validity of Nike's Copyright Registration. Moreover, Mr. Leonard asserts as an affirmative defense that Mr. Leonard, not Nike, is the exclusive owner of the Leonard Logo. (Countercl. Answer, Second Affirmative Defense (Copyright Ownership).)

In cases such as this where one party challenges the validity of another's registered copyright based on lack of originality, factual determinations on originality are considered inappropriate even at the summary judgment stage where the Court may go beyond the pleadings (in contrast to a Rule 12 motion).  For instance, in *Lambert Corp. v. LBJC Inc.*, a copyright infringement action concerning the use of logos consisting of an arrangement of images superimposed on a human skull, the defendant challenged the originality of plaintiff's copyrighted design (and thus argued that plaintiff's copyright was invalid), while the plaintiff argued that its copyrighted image was sufficiently unique to be original.  2014 U.S. Dist LEXIS 83108, at *9-11.  The court denied the parties' respective motions for summary judgment and found that the "existence of conflicting evidence on the issue of originality" meant that "this issue is not suitable for resolution" by the court.  *Id.* at *12, 16.

Finally, Nike's arguments that Mr. Leonard made factual admissions in his Answer to Nike's Counterclaim are meritless.  Contrary to Nike's arguments, admitting that the Leonard Logo "was affixed by NIKE to NIKE merchandise worn and endorsed by Leonard" (*see* Countercl. ¶ 29; Countercl. Answer ¶ 29) in no way undermines Mr. Leonard's assertion in his pleadings that he is the owner of the Leonard Logo.  Indeed, this statement is consistent with Mr. Leonard's position that he owned the logo and permitted Nike to use it.

Mr. Leonard alleges that Nike's application for the Nike Copyright falsely represents that Nike is the author of the design.  (Comp. ¶¶ 39-40.)  The case law that Nike cites in purported support of its argument that Mr. Leonard's copyright registration should be declared invalid also applies here to preclude a finding that Nike's copyright is valid.  *See Gold Value Int'l Textile, Inc. v. Sanctuary Clothing, LLC*, 925 F.3d 1140, 1144 (9th Cir. 2019) (copyright registration is invalid when inaccurate information was included in the application with knowledge that it was

inaccurate and when that inaccuracy, if known, would have caused the Register of Copyrights to refuse registration) (citing 17 U.S.C. § 411(b)); *Sorenson v. Wolfson*, 96 F. Supp. 3d 347 (S.D.N.Y. 2015) ("Had the Copyright Office known that Ernst prepared and created the plans— ***and that Ernst had not transferred ownership*** [] —the Copyright Office would not have granted Sorenson a copyright registration") (emphasis added).

Nike's argument appears to be that the Court should disregard the allegations in Mr. Leonard's pleadings yet accept as true the allegations in Nike's pleadings.  Nike fails to recognize that it, not Mr. Leonard, is the party moving for judgment on the pleadings.  Such a bizarre attempt to reverse the standard of Rule 12(c) should not be permitted to succeed.  *McNair v. Oregon*, 2017 U.S. Dist. LEXIS 136125, at *3 (D. Or. Aug. 16, 2017) (denying plaintiff's motion for judgment on the pleadings where "[p]laintiff has failed to demonstrate that in light of [d]efendants' Answer and Affirmative Defenses there are no material issues of fact").

Because Nike's breach of contract counterclaims for which Nike seeks judgment as a matter of law (Nike's Fourth and Fifth Claims for Relief) arise from Nike's purported ownership of a valid copyright, judgment on these claims is improper.

> **B.  Alternatively, Mr. Leonard's Allegations and Affirmative Defenses Preclude an Award of Judgment in Nike's Favor Regarding Nike's Copyright and Breach of Contract Counterclaims.**

Even if Nike's copyright registration were valid (it is not), Mr. Leonard pleads that Nike failed to enforce any rights it would have had with respect to any non-Nike uses by Mr. Leonard or other uses by third parties during the term of the Nike Agreement.  (*See, e.g.,* Compl. ¶¶ 34-35; Countercl. Answer, Fourth Affirmative Defense (waiver, estoppel and unclean hands) and Fifth Affirmative Defense (laches and acquiescence).)  Such failure to enforce could be found to result in abandonment of copyright or otherwise estop Nike from enforcing any rights it would

otherwise have.  *See generally Micro Star v. Formgen Inc.,* 154 F.3d 1107, 1114 (9th Cir. 1998) ("It is well settled that rights gained under the Copyright Act may be abandoned"); *Cafferty v. Scotti Bros. Records*, 969 F. Supp. 193, 199 (S.D.N.Y. 1997) (dismissing infringement claim on "estoppel, waiver, or ratification grounds").  Whether Nike indeed failed to enforce its purported ownership rights is an issue of fact for which discovery is appropriate.

### C.    Mr. Leonard Did Not Fraudulently Register His Copyright.

Nike seeks a declaratory judgment that Mr. Leonard intended to "deceive" the Copyright Office by fraudulently claiming to be the author of the "Claw Design." (Countercl. ¶ 71.)  Mr. Leonard has denied these claims.  (Countercl. Answer ¶ 71.)  Nike therefore is not entitled to judgment on this counterclaim for the reasons discussed above.[18]

## V.    In the Event that the Court Finds Mr. Leonard's Allegations Deficient, Leave to Amend is Properly Granted

While Mr. Leonard respectfully submits that Nike's Motion should be denied for the reasons discussed herein, should the Court nonetheless grant Nike's Motion in part or in whole, Mr. Leonard respectfully requests leave to amend his Complaint and/or answer to Nike's Counterclaim.  *See* Fed. R. Civ. P. 15(a)(2) (courts "should freely give leave [to amend] when justice so requires"); *see also Malibu Textiles*, 922 F.3d at 954 (reversing denial of leave to amend complaint alleging copyright infringement and noting that "[d]ismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment").

---

[18] Discovery will show that, in applying for his copyright application for the Leonard Logo, Mr. Leonard disclosed to the Copyright Office that Nike was also claiming copyrights in the Logo. Mr. Leonard cannot have committed fraud on the Copyright Office when he clearly disclosed the very information he is accused to have concealed.  17 U.S.C § 411(b).

PLAINTIFF'S RESPONSE TO MOTION FOR JUDGMENT ON THE PLEADINGS

## CONCLUSION

For the reasons set forth above, Mr. Leonard respectfully requests the Court deny Nike's

Motion in its entirety.  In the event that the Court grants Nike's Motion, whether in full or in

part, Mr. Leonard respectfully requests leave to amend his Complaint and/or Answer to Nike's

Counterclaim.

Dated:   January 13, 2020

Respectfully submitted,

/s/ Peter R. Ginsberg
Peter R. Ginsberg (admitted *pro hac vice*)
Mitchell C. Stein (admitted *pro hac vice*)
SULLIVAN & WORCESTER LLP
prginsberg@sullivanlaw.com
mstein@sullivanlaw.com

Nathaniel R.B. Koslof (admitted *pro hac vice*)
SULLIVAN & WORCESTER LLP
nkoslof@sullivanlaw.com

Renee E. Rothauge, OSB #903712
MARKOWITZ HERBOLD PC
Email: ReneeRothauge@markowitzherbold.com

*Attorneys for Plaintiff Kawhi Leonard*

<u>Certificate of Service</u>

I hereby certify that on January 13, 2020, I caused the foregoing pleading to be served via ECF notification and via email to the following:

STOEL RIVES LLP
B. John Casey, OSB No. 120025
John.casey@stoel.com
Tyler J. Killeen, OSB No. 165136
Tyler.killeen@stoel.com
760 SW Ninth Avenue, Suite 3000
Portland, OR 97205
Telephone: 503.224.3380
Facsimile: 503.220.2480

-and-

DLA PIPER LLP (US)
Tamar Y. Duvdevani (admitted *pro hac vice*)
Matthew Ganas (admitted *pro hac vice*)
1251 Avenue of the Americas
27th Floor
New York, NY 10020-1104
212-335-4500
Fax: 212-335-4501
Email: matt.ganas@us.dlapiper.com
Email: tamar.duvdevani@us.dlapiper.com

*Attorneys for Defendant Counterclaimant NIKE, Inc.*

/s/ Mitchell C. Stein
Mitchell C. Stein