IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**KAWHI LEONARD**,

        Plaintiff/Counter-Defendant,

        v.

**NIKE INC.**,

        Defendant/Counter-Claimant.

Case No. 3:19-cv-01586-MO

OPINION AND ORDER

**MOSMAN, J.**,

On April 22, 2020, I heard oral argument on Defendant Nike's Motion for Judgment on the Pleadings [ECF 54]. Min. [ECF 75]. At the hearing, I granted Nike's motion with respect to its ownership of the "Claw Design" logo and, as a result, I dismissed Plaintiff Kawhi Leonard's claims with prejudice. *Id.* I took under advisement Nike's motion with respect to Nike's remaining counterclaims. *Id.* The following opinion briefly supplements my analysis on the ownership question and resolves the issues I took under advisement.

## LEGAL STANDARD

Under Federal Rule of Procedure 12(c), "[j]udgment on the pleadings is proper when the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law." *Hal Roach Studios,*

*Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989) (citation omitted). In resolving the motion, the allegations of the non-moving party are credited as true, while the allegations of the moving party which have been denied are deemed false. *Id.* The court, however, is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint." *See Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) (citation omitted).

## DISCUSSION

I. **Supplemental Discussion of Nike's Ownership of the "Claw Design."**

As I stated at oral argument, ownership over the Claw Design turns on the "Men's Pro Basketball Contract" ("Nike Contract") entered into by Mr. Leonard and Nike.[1] Tr. [ECR 76] at 6-7. The relevant provision is Paragraph 8(a) of the Standard Terms, which states:

> **8. OWNERSHIP OF NIKE MARKS, DESIGNS & CREATIVES.**
>
> (a) [Leonard] acknowledges that NIKE exclusively owns all rights, title and interest in and to the NIKE Marks and that **NIKE shall exclusively own** all rights, title and interest in and to **any logos**, trademarks, service marks, characters, personas, **copyrights**, shoe or other product designs, patents, trade secrets or other forms of intellectual property **created by NIKE . . . or [Leonard]** in connection with this Contract;

Nike Contract [16-1] at 7 (emphasis added).[2]

I held that the Nike Contract established Nike's ownership of the Claw Design because the Claw Design is (1) a new piece of intellectual property (2) created "in connection with" the Nike Contract. Tr. [76] at 39-40. The following supplements my analysis on these two points.

---

[1] A copy of the Nike Contract is attached as Exhibit A to Nike's Answer [ECF 16-1].

[2] I cite to the ECF page number for this source.

2   –   OPINION AND ORDER

**A. Whether the "Claw Design" constitutes new intellectual property.**

The "Claw Design" is Nike's terminology for the following image:



Nike Answer [ECF 16] at 2.

Both Nike and Mr. Leonard have registered copyrights for the Claw Design. *Id.* ¶ 3; Nike Countercl.³ [16] ¶¶ 40-41; Leonard Answer to Countercl. [ECF 26] ¶¶ 40-41. The dispute over who is the proper owner of the Claw Design is the core issue in this case.

The other image relevant to this case is what Nike terms the "Leonard Sketch":



Nike Answer [16] at 2.

---

³    Nike's counterclaims begin on Page 11 of its Answer & Counterclaim [ECF 16], and the numeration of paragraphs restarts at 1.

3   –   OPINION AND ORDER

While Nike asserts that this case is a tale of two images, Mr. Leonard refers throughout the pleadings and his briefings to a singular "Leonard Logo." *See, e.g.*, Resp. [ECF 57] at 5. As discussed extensively at oral argument, this is because Mr. Leonard's theory is that no new intellectual property was created during the term of the Nike Contract; rather, the "Claw Design" is a mere modification of a preexisting logo that Mr. Leonard designed and created independent of Nike and the Nike Contract. *See id.* I rejected that theory at oral argument and do not retread my analysis here. *See* Tr. [76] at 39-40. I supplement my remarks only to demonstrate that Mr. Leonard's own pleadings—which I must accept as true for the purposes of this motion—reveal that, as a factual matter, the above two images are the relevant images in play.[4]

Mr. Leonard's pleadings, accepted as true and read in the light most favorable to him, demonstrate the following: (1) at some point before entering the Nike Contract, Mr. Leonard had the idea to create a logo which incorporated his initials and the number "2" into a drawing of his hand; (2) Mr. Leonard, also before entering the Nike Contract, created the "Leonard Sketch" as a draft of that idea; (3) during the period of the Nike Contract,[5] Mr. Leonard sent the Leonard Sketch to Nike's design team; and (4) after an iterative design process involving Mr. Leonard and the Nike design team, the "Claw Design" logo was created in the summer of 2014. Below, I walk through how each of the preceding points can be readily discerned from the pleadings.

First, there is no dispute that Mr. Leonard conceived of the idea for a logo involving his initials and his hand prior to entering the Nike Contract. Compl. [ECF 1] ¶ 17.

---

[4] The factual existence of the two separate images, as discerned from the pleadings, is a separate matter from the legal question of whether those two images should be treated as the same piece of intellectual property.

[5] The Nike Contract ran from October 2011 to September 2018. Compl. [1] ¶¶ 20-21.

Second and third, Mr. Leonard describes that "[i]n late December 2011 or January 2012, Leonard refined a logo he had been creating for several years that encompassed his large and powerful hands, his initials and his jersey number" and that, at some point prior to Spring 2014, he sent this logo design to Nike. *Id*. ¶¶ 18, 25-26. This logo design is the only physical expression of Mr. Leonard's idea that Mr. Leonard alleges he sent to Nike. While Mr. Leonard refers to this logo design as the "Leonard Logo," his answers to Nike's counterclaims reveal that, at this point, the factual image we are talking about is the "Leonard Sketch" copied above. Nike Countercl. [16] ¶ 26; Leonard Answer [26] ¶ 26 (admitting that during the term of the Nike Contract, Mr. Leonard sent Nike the "Leonard Sketch").

Fourth, after Mr. Leonard sent Nike the Leonard Sketch, the Nike design team reviewed the Sketch and sent Mr. Leonard proposals for a "modified" version of the Leonard Sketch in Spring 2014. Compl. [1] ¶ 26. Mr. Leonard rejected those proposals. *Id*. ¶ 27. "In early Summer 2014, Nike provided additional proposals to Leonard using the [Leonard Sketch]." *Id.* ¶ 28. "Leonard accepted one of the June 2014 proposals and granted Nike permission to affix **that logo**, *based upon* the [Leonard Sketch], on Nike merchandise during the term of the Nike Agreement." *Id.* ¶ 29 (emphasis added). "[T]hat logo" is the "Claw Design." Nike Countercl. [16] ¶ 28-29; Leonard Answer [26] ¶ 29 (admitting that the "Claw Design" was affixed to Nike merchandise that was worn and endorsed by Mr. Leonard). And for the reasons stated at oral argument, the Claw Design constitutes a new, distinct piece of intellectual property. Tr. [76] at 6-9, 39-40.

//

//

//

5 –   OPINION AND ORDER

### B. Whether the Claw Design was created "in connection with" the Nike Contract.

If the Claw Design was created "in connection with" the Nike Contract, Nike owns it.[6] As I stated at oral argument, Mr. Leonard's argument that the contractual language "in connection with" is ambiguous is unconvincing. Tr. [76] at 16; *see also Hoffman Constr. Co. of Alaska v. Fred S. James. & Co. of Or.*, 836 P.2d 703, 706 (Or. 1992). Thus, whether the Claw Design was created "in connection with" the Nike Contract is a straightforward matter of contract application.

The general purpose of the Nike Contract is to pay Mr. Leonard for "the use of [Leonard]'s personal services and expertise in the sport of professional basketball and [Leonard]'s endorsement of the NIKE brand and use of NIKE products." Nike Contract [16-1] at 2. According to Mr. Leonard's complaint, "[a]t some point during the term of the [Nike Contract], Nike began discussions with Leonard about creating a unique logo to affix to merchandise to be sold under the [Nike Contract]." Compl. [1] ¶ 23. As discussed above, the Claw Design is the "unique logo" that was created and affixed to Nike merchandise, which in turn was worn and endorsed by Mr. Leonard while he was under contract with Nike. *See* Nike Countercl. [16] ¶¶ 28-29; Leonard Answer [26] ¶ 29. In short, Nike collaborated with Mr. Leonard to create the Claw Design which it affixed to new Nike merchandise, which Leonard wore and endorsed, and which Nike sold. Not only was this activity done "in connection with" the Nike Contract, it represents the whole point of the Nike Contract.

Therefore, for the reasons stated at oral argument and herein, Nike owns the Claw Design and the right to register a copyright for it.

---

[6] As Paragraph 8(a) of the Nike Contract makes clear, this is true whether Nike *or* Mr. Leonard created the Claw Design, or whether they worked together in doing so.

## II. Nike's Remaining Counterclaims

In its motion, Nike moves for judgment on the pleadings on all six of its counterclaims. The six counterclaims are:

1. Declaratory Judgment of Copyright Ownership

2. Copyright Infringement against Leonard

3. Copyright Right Cancellation for Fraud on the Copyright Office

4. Breach of Contract, Paragraph 8

5. Breach of Contract, Paragraph 13(b)

6. Breach of Contract, Paragraph 21

Nike Countercl. [16] at 22-27.

As already discussed, at the hearing I granted Nike's motion with respect to its first counterclaim and took under advisement its remaining counterclaims. I now resolve the remainder of Nike's motion and I GRANT in part and DENY in part as follows.

**2. Copyright Infringement against Leonard—DENIED.**

With its ownership of the Claw Design copyright established, Nike moves for judgment on the pleadings on its counterclaim for copyright infringement against Mr. Leonard. Nike alleges that Mr. Leonard infringed its copyright by (1) using the Claw Design logo in the past (on non-Nike merchandise, for charity events, etc.) and (2) by stating his intention to use it for his own commercial and non-commercial purposes in the future. *See* Mot. [54] at 21-22 (citing Compl. [1] ¶¶ 4, 34, 44).

As to Mr. Leonard's purported unauthorized past use of the Claw Design, Nike cites to the complaint where Mr. Leonard states that: "Leonard, without dispute or challenge from Nike, continued to use the [Claw Design] on non-Nike goods, including apparel and merchandise used

for basketball camps, appearances and charity events, even while Nike was affixing [the Claw Design] to Nike merchandise," Compl. [1] ¶ 34. Mot. [54] at 22.

I DENY Nike's motion as it pertains to Mr. Leonard's past use of the Claw Design because I think the pleadings establish a dispute of fact about whether this past use was permitted or tacitly encouraged by Nike, which would implicate Mr. Leonard's asserted affirmative defenses of waiver or estoppel.[7] *See* Leonard Answer [26] at 16 (Fourth Affirmative Defense); Resp. [57] at 6.

I also DENY Nike's motion insofar as it seeks injunctive relief for future violations of Nike's copyright. While Mr. Leonard states in his complaint that he intends to use the Claw Design for his own purposes in the future, that intent was undoubtedly premised on his belief that he was the rightful owner of the Claw Design. In light of this court's holding that Mr. Leonard does not own the Claw Design, I find the likelihood of future harm to be significantly reduced such that injunctive relief would be inappropriate at this time.

### 3. Copyright Cancellation for Fraud on the Copyright Office—DENIED.

Nike moves the court to find that "by Leonard's own admissions, the Leonard Copyright Registration was fraudulently obtained and is therefore invalid." Mot. [54] at 24. Nike argues that "there is no question that Leonard knew that he was not, in fact, the author of the Claw Design, but knowingly lied to the Copyright Office in order to obtain a registration anyway." *Id.*

I disagree. I think that Mr. Leonard's pleadings, viewed in the light most favorable to him, do not establish that he "knowingly lied" to the copyright office in registering his copyright for the Claw Design. In his eyes, Mr. Leonard is the author of the Claw Design: it was his idea

---

[7] To be clear, there are no allegations in the pleadings that plausibly suggest that Nike abandoned its copyright of the Claw Design and I reject such an argument. *See* Resp. [57] at 26-27.

and he provided a preliminary design to the Nike design team who "modified" the design at his direction to produce the resulting Claw Design. Moreover, Mr. Leonard states in his Response that: "Discovery will show that, in applying for his copyright application for the Leonard Logo, Mr. Leonard disclosed to the Copyright Office that Nike was also claiming copyrights in the Logo." Resp. [57] at 27 n.18. This is a fact which, if true, would significantly undermine Nike's fraud claim.

Therefore, I DENY Nike's motion for judgment on the pleadings on its third counterclaim.

### 4. Breach of Contract, Paragraph 8—DENIED.

To prevail on a breach of contract claim, Nike must establish: (1) the existence of a contract, (2) its relevant terms, (3) Nike's full performance and lack of breach, and (4) Leonard's breach and resulting damages. *Slover v. Or. State Bd. Of Clinical Soc. Workers*, 927 P.2d 1098, 1101 (Or. Ct. App. 1996).

As described above, Paragraph 8(a) of the Nike Contract gives Nike ownership over the Claw Design. Paragraph 8(b) requires that Leonard: "shall completely cooperate with NIKE in its efforts to obtain and maintain protection for [the created IP's] right, title and interest, including by promptly executing any documents as may be required by NIKE in connection therewith." Nike Contract [16-1] at 7.

Nike argues that Leonard breached Paragraph 8(b) by registering a copyright and other trade protections for the Claw Design. Mot. [54] at 25-27.

I DENY Nike's motion as to this counterclaim for reasons similar to why I denied its motion with respect to its second counterclaim.

9  –  OPINION AND ORDER

Mr. Leonard alleges in his complaint that Nike, in essence, repeatedly assured Mr. Leonard that he was the owner of the "Leonard Logo." *See* Compl. [1] ¶¶ 31, 33. As I stated at oral argument, while those allegations and associated evidence would be inadmissible under Oregon's parol evidence rule for the purpose of interpreting the Nike Contract, they would be potentially admissible as evidence supporting Mr. Leonard's affirmative defenses such as estoppel. Thus, the potential viability of an affirmative defense to this counterclaim turns on a dispute of fact that cannot be resolved at this stage.

### 5. Breach of Contract, Paragraph 13(b)—DENIED.

Paragraph 13(b) of the Nike Contract states that: "[Leonard] shall [not] permit, or authorize (except as permitted under the foregoing clause (a)), any third-party licensee of theirs to use any NIKE Marks or condone any licensee's unauthorized use thereof." Nike Contract [16-1] at 9.

Nike argues that (1) the Claw Design is a "Nike Mark" and thus (2) Leonard violated Paragraph 13(b) by (i) using the Claw Design on non-Nike goods in the past, and (ii) by stating an intent to use the Claw Design on non-Nike goods in the future. Mot. [54] at 27-28.

Assuming *arguendo* that the Claw Design is a "Nike Mark," I DENY Nike's motion on this counterclaim for the same reasons I denied the motion with respect to Nike's second counterclaim.

### 6. Breach of Contract, Paragraph 21—GRANTED.

Finally, Nike moves for judgment on the pleadings on its sixth counterclaim, alleging breach of the Nike Contract's forum selection clause, which requires that any dispute arising under the contract be litigated in an Oregon court. Mot. [54] at 2; *see also* Nike Contract [16-1] at 11.

Mr. Leonard filed this action in the Southern District of California, where it was handled by Judge Bashant. [ECF 1]. In granting Nike's motion to transfer the case to this court, Judge Bashant held that:

> [T]he dispute is clearly over the use and ownership of the finalized copyrighted logo….[T]he Court finds that this suit 'arises under' the Nike [Contract], as the whole point of the Complaint is to seek a declaration as to who owns the copyrighted logo, which was ultimately created and copyrighted during the term of the Nike [Contract]. Leonard is disputing that Nike had the right to copyright the logo, and Nike believes it had the right per the Nike [Contract]. This dispute cannot be resolved without reference to the Nike [Contract] and its intellectual property provision.

Order [ECF 30-1] at 6.

I agree with Judge Bashant that the underlying dispute here obviously involves and "arises under" the Nike Contract. Thus, I hold that Mr. Leonard breached Paragraph 21 of the Standard Terms of the Nike Contract by failing to file this suit in an Oregon court. As it is undisputed that Nike performed its obligations under the Nike Contract, and the contract's existence and underlying terms are also not in dispute, I hold that Nike has carried its burden to prevail on its counterclaim for breach of Paragraph 21 as a matter of law and I GRANT its motion to that effect. It may pursue relief accordingly. *See Digimarc Corp. v. Verance Corp.*, No. 10-cv-1489-JE, 2011 WL 7077315, at *12 (D. Or. Sept. 19, 2011) (recognizing that breach of a forum selection clause is an actionable claim).

//

//

//

//

//

//

11 –   OPINION AND ORDER

## CONCLUSION

For the reasons stated at oral argument and herein, I GRANT in part and DENY in part Nike's Motion for Judgment on the Pleadings [54]. I GRANT judgment on the pleadings in favor of Nike on its first and sixth counterclaims. I DENY judgment on the pleadings on Nike's second through fifth counterclaims. I DISMISS Mr. Leonard's claims with prejudice.

IT IS SO ORDERED.

DATED this 18th day of May, 2020.

*Michael W. Mosman*
MICHAEL W. MOSMAN
United States District Judge